UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PATRICIA A., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations, <br><br> Defendant. | CASE NO. C18-5474-MAT <br><br> ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1955.[1] She has a high school diploma and one year of

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 1

college, and a certificate in secretarial work. (AR 37-38.) She previously worked as an office clerk, accounting clerk, production clerk, and procurement clerk. (AR 81, 340.)

Plaintiff applied for DIB in March 2012. (AR 111, 306-12.) That application was denied and Plaintiff timely requested a hearing. (AR 162-64, 171-77.)

On May 6, 2014, ALJ Gordon W. Griggs held a hearing, taking testimony from Plaintiff and a vocational expert (VE). (AR 31-70.) On July 1, 2014, the ALJ issued a decision finding Plaintiff not disabled before her date last insured (DLI), December 31, 2013. (AR 141-51.) Plaintiff timely appealed, and the Appeals Council remanded the case for further proceedings. (AR 158-60.)

On September 1, 2016, the ALJ held another hearing, taking testimony from Plaintiff and a VE. (AR 71-110.) On March 8, 2017, the ALJ issued a decision finding Plaintiff not disabled. (AR 10-24.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on April 23, 2018 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff did not engage in substantial gainful activity between the alleged onset date (November 30, 2009) and the DLI (December 31, 2013). (AR 26.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's mild osteoarthritis of the left knee

and right hand, mild greater trochanteric bursitis of the left hip, mild carpal tunnel syndrome, fibromyalgia, bipolar disorder, generalized anxiety disorder, post-traumatic stress disorder (PTSD), social anxiety disorder, and somatoform disorder. (AR 12-13.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 13-14.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing light work with additional limitations: she cannot climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs. She could occasionally balance, stoop, kneel, crouch, and crawl. She could frequently handle and finger bilaterally. She was limited to occasional exposure to extremely cold temperatures and to vibrations. She was limited to occasional exposure to hazardous conditions such as proximity to unprotected heights and moving machinery. She could adapt to a predictable work routine in terms of assigned tasks and the procedures for accomplishing those tasks. She was limited to occasional public interaction. She could interact with co-workers and supervisors on a casual or superficial basis but would not do well as a member of a highly interactive or interdependent work group such as a team. (AR 14.) With that assessment, the ALJ found Plaintiff able to perform past relevant work as an inventory management specialist, general office clerk, and accounting clerk. (AR 23-24.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Because the ALJ found Plaintiff capable of performing past relevant work, the ALJ did not proceed to step five.

(*Id.*)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) discounting her subjective symptom testimony, (2) discounting lay statements, and (3) assessing certain medical evidence and opinions. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

<u>Subjective symptom testimony</u>

The ALJ discounted Plaintiff's subjective testimony because (1) the objective medical evidence did not corroborate her allegations of severe physical limitations; (2) she alleged disabling hand-related symptoms yet sought no treatment for years; (3) her mental symptoms were mostly stable and improved with treatment; (4) she failed to comply with some of her treatment recommendations; (5) she continued to look for work during the time she claimed to be disabled; and (6) her hearing testimony contained exaggerations, when compared with statements she made to providers. (AR 16-20.) Plaintiff argues that these reasons are not clear and convincing, as required in the Ninth Circuit. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff's challenge to the ALJ's reasoning is narrow, and does not address every reason

provided to discount her testimony. Dkt. 8 at 11-15. Specifically, Plaintiff disputes one of the purported exaggerations described by the ALJ. Dkt. 8 at 12. The ALJ contrasted Plaintiff's "dire" hearing testimony about a recent trip to Chicago with her reports to her provider that she was looking forward to the trip and describing it as "good" upon her return. (AR 19.) Plaintiff argues that this one trip does not establish that she can work full-time or contradict her description of her limitations. Dkt. 8 at 12-13. Plaintiff misses the ALJ's point, however: the ALJ did not cite the trip as evidence that Plaintiff can work, but as evidence that Plaintiff exaggerated her limitations. At the hearing, Plaintiff stated that "I got there and I got home and I made it out alive." (AR 92.) The ALJ reasonably found this description to be inconsistent with her report to her doctor that the trip was "good." (AR 1061.) Even if this is not the most convincing reason to discount Plaintiff's subjective testimony, it is not the only reason given by the ALJ and many of the ALJ's reasons are unchallenged.

Plaintiff also argues that the ALJ overstated the extent to which she was responsive to treatment and doing well. Dkt. 8 at 13-14. Plaintiff argues that evidence of sporadic improvement do not indicate that she can work full-time. *Id*. But the ALJ cited evidence of more than merely sporadic improvement with treatment: the ALJ cited many records between 2010 and 2014 indicating stable mental health and improvement with treatment. (AR 18-19.) Plaintiff does not address the evidence cited by the ALJ or point to other evidence that undermines the ALJ's reasoning.

Finally, Plaintiff argues that the ALJ erred in failing to explain why he rejected her testimony that she was unable to follow instructions or get along with supervisors for 20 percent of the workday, or that she could not complete a normal workday or workweek due to her symptoms. Dkt. 8 at 14. But Plaintiff did not testify to those limitations; counsel included those

limitations in an alternative hypothetical posed to the VE. (AR 106-07.) The ALJ was not required to explain why he rejected hypothetical limitations. To the extent that Plaintiff's testimony could have been consistent with the hypothetical limitations posed to the VE (see Dkt. 13 at 7), the ALJ cited evidence inconsistent with Plaintiff's allegations of memory, concentration, and social deficits. (AR 18-19.) Plaintiff has not shown that the ALJ failed to explain why he discounted any particular portion of testimony.

Because the ALJ provided multiple clear and convincing reasons, some of which are unchallenged, to discount Plaintiff's testimony, the ALJ's assessment of Plaintiff's testimony is affirmed.

### Lay evidence

The record contains several statements written by Plaintiff's family members, describing her symptoms and limitations. (AR 384-92, 396-412, 439-44, 447-63.) Some of these lay statements had been assessed in the previous ALJ decision, and the analysis was not disturbed by the Appeals Council. (*See* AR 149, 158-60.) Thus, the ALJ reiterated the previous analysis for the older statements, and provided new reasoning with respect to statements that were not in the record at the time of the previous decision. (AR 22, 149.) The ALJ discounted all of the lay statements, finding them to be (1) largely based on Plaintiff's self-reporting, which was not entirely reliable; and/or (2) inconsistent with the medical evidence and/or with Plaintiff's own reports. (AR 22-23.)

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). *But see Molina v. Astrue*, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (describing how the failure to address lay testimony may be harmless). The ALJ

can reject the testimony of lay witnesses only upon giving germane reasons. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).

Plaintiff challenges the ALJ's assessment of the lay evidence, contending that each witness described limitations "in the same categories" described by the treatment providers. Dkt. 8 at 17. That may be true, but Plaintiff has not shown that the lay statements are consistent with the medical evidence, contrary to the ALJ's decision. Plaintiff generally asserts that the statements are consistent with all of the medical opinions (Dkt. 8 at 17), but does not address the specific inconsistencies noted by the ALJ, namely the lay descriptions of limitations pertaining to walking, use of her hands, and mental symptoms. (AR 22-23.) Because the ALJ identified specific inconsistencies between the medical record and the lay statements, this reasoning is germane. *See Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons for discounting lay testimony included inconsistency with medical evidence, evidence of claimant's activities, and claimant's reports).

Furthermore, the ALJ's other reasons for discounting the lay statements — similarity to Plaintiff's own statements, and inconsistency with Plaintiff's self-reported activities — also support the ALJ's conclusion. Plaintiff contends generally that the ALJ's reasons are not germane, but does not cite any evidence suggesting error in the ALJ's decision. Dkt. 8 at 17-18. Thus, the ALJ's decision in this respect is affirmed.

<u>Medical opinion evidence</u>

Plaintiff challenges the ALJ's assessment of opinions provided by treating physician William Hall, M.D.; treating psychologist John Reynolds, Ph.D.; and examining psychiatrist Anselm Parlatore, M.D.; as well as the State agency reviewing consultants. The Court will address each disputed opinion in turn.

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Dr. Hall

Dr. Hall completed a form checkbox opinion regarding Plaintiff's physical limitations in June 2013. (AR 816.) Dr. Hall opined that Plaintiff could stand/walk for three hours per day and sit for three hours per day. (*Id.*) He also indicated that Plaintiff would miss more than four days of work per month. (*Id.*) Dr. Hall stated that Plaintiff had been "disabled since [his] initial consultation" in 2010. (*Id.*)

The ALJ gave little weight to Dr. Hall's opinion because he cited no examination findings to support his opinion, and his treatment records noted only "minimal abnormal findings[.]" (AR 20.) The ALJ also noted that Dr. Hall recommended that Plaintiff pursue part-time work, which he found inconsistent with Dr. Hall's opinion. (AR 20 (citing AR 712).)

Plaintiff disputes the ALJ's characterization of Dr. Hall's records, arguing that there are some abnormal findings in the record. Dkt. 8 at 4. Plaintiff does not identify any of these abnormal findings, simply citing more than 100 pages of the record as support for this proposition. *Id.* (citing AR 500-27, 564-667). Without more than a listing of pages, it is not clear which findings Plaintiff argues the ALJ overlooked. The Court will not scour the record to find evidentiary support for Plaintiff's assertions. Plaintiff has failed to meet her burden to show error in the ALJ's decision in this respect.

Plaintiff also argues that Dr. Hall's opinion could be based on fibromyalgia, and the ALJ should have considered the impact of this condition, which is not always confirmed by objective evidence. Dkt. 8 at 5. Dr. Hall's opinion does not mention fibromyalgia, however: he left blank the section of the form that asked him to identify which impairments caused Plaintiff's limitations. (AR 816.) Plaintiff has not indicated how a consideration of fibromyalgia would have changed the ALJ's decision, and therefore has failed to identify a harmful error.

Lastly, Plaintiff argues that Dr. Hall's recommendation to try working part-time is not necessarily inconsistent with Dr. Hall's opinion. Dkt. 8 at 5. This may be true, but the ALJ's other reasons remain specific, legitimate reasons to discount Dr. Hall's opinion, and therefore any error as to this reason is harmless. *See Carmickle v. Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

<u>Dr. Reynolds</u>

Dr. Reynolds completed a checkbox form opinion regarding Plaintiff's mental symptoms and limitations in March 2014. (AR 908-11.) In April 2016, he documented Plaintiff's therapy treatment and listed her diagnoses and limitations. (AR 1063.) The ALJ summarized Dr. Reynolds' findings and gave the opinions little weight. (AR 20-21.)

The ALJ discounted the 2014 opinion because Dr. Reynolds did not cite any evidence to support his conclusions, and the ALJ found Plaintiff's activities (preparing meals, laundry, driving, shopping for groceries, reading, attending appointments, socializing) to be inconsistent with the limitations described. (AR 20.) Plaintiff suggests that Dr. Reynolds' treatment notes support his conclusions (Dkt. 8 at 7), but his treatment notes do not mention the limitations described in the opinion. For example, many of Dr. Reynolds' treatment notes discuss Plaintiff's consideration of volunteer or part-time work options (AR 941, 942, 943, 951, 952, 953, 954, 955), yet Dr. Reynolds' opinion lists limitations that would be inconsistent with even a part-time position. (*See, e.g.*, AR 908 (moderate limitation in Plaintiff's ability to remember locations and work-like procedures), 909 (marked limitation in Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors).) And in any event, Dr. Reynolds did not list any particular findings to support his opinion (AR 911), and the ALJ did not err in discounting the opinion as unexplained. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); *Crane v. Shalala*, 76 F.3d 252, 253 (9th Cir. 1996) (ALJ permissibly rejected three psychological evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions").

The ALJ discounted Dr. Reynolds' 2016 opinion because he relied on Plaintiff's self-report in rendering his opinion, as evidenced by Dr. Reynolds' reference to Plaintiff's self-reported workplace limitations. (AR 20-21 (referencing AR 1063).) Plaintiff argues that this reasoning is not legitimate because Dr. Reynolds relied on his own clinical observations, as well as Plaintiff's self-report, in reaching his conclusions. Dkt. 8 at 6. Plaintiff's argument is not persuasive in this

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 10

situation, because Dr. Reynolds cites only Plaintiff's self-report as the basis for his conclusions as to the extent of her limitations. (AR 1063.) Because the ALJ properly discounted Plaintiff's self-report, as explained *supra*, the ALJ did not err in discounting a medical opinion rendered in reliance on that self-report. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the district court noted, however, the treating physician's prescribed work restrictions were based on Bray's subjective characterization of her symptoms. As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements.").

Dr. Parlatore

Dr. Parlatore examined Plaintiff in April 2016 and wrote a narrative report describing his examination and conclusions. (AR 970-74.) His medical source statement reads:

> What the claimant can do despite impairments? She does have the ability to reason and understand and her memory, sustained concentration, pace and persistence tested normally in the office today. There was no organic cognitive deficit but she is markedly impaired in terms of her social interaction and adaptation.
>
> She cannot perform activities within a schedule, maintain regular attendance and be punctual and cannot learn new tasks or perform routine tasks nor adapt to changes in a routine work setting nor make simple work related decisions nor communicate and perform effectively in a work setting nor complete a normal workday or workweek without interruptions from her symptoms, most notably her psychomotor retardation and depression and she cannot maintain appropriate behavior in a work setting or set realistic goals and plan independently.
>
> She is markedly impaired in terms of her ability to tolerate increased mental demands associated with competitive work.

(AR 973.) The ALJ gave little weight to Dr. Parlatore's opinion, finding it inconsistent with treatment notes from Plaintiff's treating psychiatrist describing Plaintiff's (1) stable mood, (2) improved PTSD symptoms with medication, and (3) ability to travel by plane to a family reunion. (AR 21.)

Plaintiff argues that the evidence cited by the ALJ is not actually inconsistent with Dr. Parlatore's opinion, because (1) a "stable" mood could refer to an unchanging disabling mood, (2) she may not have improved to the point that she could work, and (3) she did not interact with many people during her family reunion. Dkt. 8 at 8. It is possible to interpret the evidence that way, but it is not the only reasonable interpretation of the evidence. The references in the treatment notes to stable mood and improvement with medication reasonably suggest less severe functional limitations than described by Dr. Parlatore. (*See, e.g.*, AR 910 (March 2013 treatment note describing Plaintiff with "[m]oods very stable + euthymic" and "best I've seen her"), 918 (September 2013 treatment note describing improvement with a medication adjustment, and a pleasant/cooperative mood), 920 (October 2013 treatment note describing Plaintiff as "[d]oing much better" with a medication adjustment and decreasing PTSD symptoms, with a "free + easy smile!"), 924 (January 2014 treatment note describing Plaintiff as "[d]oing very well[,]" "[b]est I've seen her, smile + laughs freely for 1st time[,]" and Plaintiff herself reports that she hasn't "felt this good since she can remember").) The ALJ reasonably construed these treatment notes as inconsistent with Dr. Parlatore's conclusions, and did not err in discounting Dr. Parlatore's opinion on that basis. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions).

State agency consultants

The ALJ purported to give "partial weight" to the opinions of the State agency psychological consultants, who found that Plaintiff had some social and adaptation deficits. (AR 21-22.) Plaintiff argues that the ALJ erred in failing to account for the moderate concentration limitations the consultants indicated, and in failing to limit Plaintiff to the "simple and some detailed" tasks that the consultants found she could perform. Dkt. 8 at 9. Plaintiff also notes that

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 12

the ALJ was instructed by the Appeals Council to reconsider the State agency opinions on remand, and yet the RFC assessment from the previous ALJ decision was reiterated in the current decision. *Id.* (referencing AR 146).

It is true that the consultants found moderate concentration deficits, but they also explained that Plaintiff could "attend to basic demands of a job for 2 hour periods without breaks, on a sustained basis." (AR 120, 133-34.) The consultants also described Plaintiff as "not significantly limited" in performing either simple or detailed instructions. (AR 120, 133-34.) The ALJ's RFC is consistent with those opinions, and thus Plaintiff has failed to demonstrate error in the ALJ's assessment of the State agency opinions. *See* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

To the extent that Plaintiff attempts to identify a conflict between the State agency opinions' suggestion that she can perform "simple and some detailed" tasks and the ALJ's step-four finding that she can perform her past skilled and semi-skilled jobs, this argument is not persuasive. Dkt. 8 at 9-10. The skill level of a job does not refer to the level of detail involved in the work tasks, but the length of time that it takes a worker to master the job. *See Gonzales v. Astrue*, 2012 WL 14002, at *13 (E.D. Cal. Jan. 4, 2012); Dictionary of Occupational Titles, App. C, 1991 WL 688702 (Jan. 1, 2016); SSR 00-4p. Thus, Plaintiff has not identified a conflict between the State agency opinions and the ALJ's RFC assessment in this regard.

Finally, the fact that the ALJ's RFC assessment is essentially unchanged from the first to the second decision does not establish that the ALJ did not comply with the Appeals Council's instruction to reconsider the State agency opinions. The first ALJ decision did not assign a weight to the State agency opinions, and the second ALJ decision does. *Compare* AR 141-51 (first

decision) *with* AR 10-24 (second decision). As explained *supra*, the ALJ's RFC assessment is consistent with the State agency opinions, so it is unsurprising that the RFC assessment was not substantially altered upon explicit consideration of the State agency opinions.

For all of these reasons, Plaintiff has failed to establish error in the ALJ's assessment of the State agency opinions.

## CONCLUSION

For the reasons set forth above, this matter is AFFIRMED.

DATED this 28th day of February, 2019.

Mary Alice Theiler
United States Magistrate Judge

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 14